

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| GAIL THOMAS WHITCOMB | § | CASE NO: 17-31692 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

This Memorandum Opinion and accompanying Order resolves Gail Thomas Whitcomb's motion to disqualify counsel for Jeriann Kolber. On June 29, 2017, the Court held a hearing on the motion and asked for additional briefing on two issues: (i) may confidential information alone impact a lawyer's ability to adversely represent an individual; and (ii) does the arbitrator's previous decision have a preclusive effect on this Court's decision?  After reviewing this additional briefing, Ostrom Morris, P.L.L.C. is disqualified from representing Jeriann Whitcomb Kolber in this bankruptcy case.

### Background

In 2008, Geraldine Whitcomb died and left an estate, trust, and partnership, which gave rise to a longstanding family dispute between her descendants—Gail Thomas Whitcomb and Jeriann Kolber. In an attempt to end the litigation, Whitcomb and Kolber entered into a Family Settlement Agreement in 2012 that required them to participate in binding arbitration to settle all disputes arising from the Agreement.

In 2013, Kolber accused Whitcomb of breaching the Agreement and retained Jason Ostrom as counsel for the ensuing arbitration. (ECF No. 74 at 4).  In turn, Whitcomb sought representation from Keith Morris.  Between June and September 2014, Whitcomb sent confidential information to Morris regarding Geraldine Whitcomb's estate, the trust, and partnership in preparation for the arbitration.  The confidential information was communicated in

a series of in person meetings, phone calls, and e-mails. (ECF No. 74 at 4–5). Morris eventually declined to represent Whitcomb in the arbitration. During at least a portion of the time that he was receiving confidential information, Morris was engaged in talks with Ostrom to create the law firm Ostrom Morris, P.L.L.C. (ECF No. 75 at 2). Whitcomb initially filed a motion to disqualify Ostrom Morris as Kolber's counsel for the arbitration, which the arbitrator denied. The reasons for the denial are not known. (ECF No. 75 at 2). The arbitration proceeded on the merits on April 6, 2015, and on September 12, 2016, the arbitrator issued a decision in Kolber's favor. (ECF No. 75 at 2).

The arbitration award has not been confirmed. Whitcomb filed a bankruptcy petition on March 21, 2017. The filing of the petition invoked the automatic stay and precluded any attempt to confirm the arbitrator's award. (ECF No. 74 at 9). Subsequently, Kolber filed a motion to lift the stay to confirm the arbitration award in state district court. (ECF no. 75 at 3). In opposition, Whitcomb filed a motion to disqualify Ostrom Morris from representing Kolber in any of the bankruptcy proceedings. (ECF No. 74 at 1). On June 29, 2017, the Court held a hearing on this motion and orally ruled: (i) that no attorney client relationship existed between Whitcomb and Morris; but (ii) confidential information was shared between Whitcomb and Morris.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). This case was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

## Analysis

A motion to disqualify is a substantive motion that is decided under federal law. *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). The local rules in the Southern District

of Texas require that "the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct." S.D. Tex. L.R. App. A, R. 1A. Additionally, the Fifth Circuit has held that the ABA Model Rules and Texas Disciplinary Rules of Professional Conduct parallel one another regarding attorney use of confidential information. *In re Am. Airlines*, 972 F.2d 605, 620 (5th Cir. 1995). Accordingly, Texas Disciplinary Rule of Professional Conduct 1.05 applies to this decision.

> Rule 1.06 states:
>
> a lawyer shall not knowingly . . . (3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(b)(3). The comments to Rule 1.05 further dictate that a lawyer's duty to protect confidential information applies equally to "those who sought to employ the lawyer" as well as to former clients. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 1.

In deciding motions to disqualify counsel, the Fifth Circuit initially employs a two-pronged test requiring: (i) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and (ii) a substantial relationship between the subject matter of the former and present representations. *Am. Airlines*, 972 F.2d at 614. Under this test, Whitcomb's motion to disqualify counsel fails because no attorney-client relationship existed between Whitcomb and Morris during the June 29, 2017 hearing.

*Disclosure of Confidential Information*

Disqualification is also appropriate if the former attorney possesses confidential information. *Id*. at 615. For example, in *Islander East Rental Program v. Ferguson*, a law firm represented a client in his divorce proceeding in which one of the key issues was the client's

income from the Islander East property.  917 F.Supp. 504, 511 (S.D. Tex. 1996).  Eighteen years later, the client sued Islander for tortious interference, trademark infringement, and breach of fiduciary duty and Islander sought to employ the same law firm which previously represented the client.  *Id*. at 507.  The district court held that, given the client's prominent role managing Islander and the client's income history learned during his divorce proceedings, it was valid to assume information shared in the divorce proceeding would be relevant in the subsequent suit.  *Id*. at 513.  Furthermore, the potential for the firm to use prior disclosures to impeach the client also demonstrates how confidential information gained during the earlier representation could be used to the client's detriment, violating Rule 1.05.  *Id*.  Consequently, the law firm's possession of confidential information in *Islander* was enough to support disqualification from subsequent representation adverse to the client.  *Id*.

Although possessing confidential information is grounds for disqualification, the Fifth Circuit requires that counsel have the opportunity to demonstrate that no confidential information was obtained during a prior representation.  *In re ProEducation Int'l, Inc*., 587 F.3d 296, 304 (5th Cir. 2009).  In *ProEducation*, the Fifth Circuit emphasized that when lawyers leave law firms, the opportunity to share confidential information between attorneys in a firm by itself does not invoke an irrebuttable presumption that confidences were in fact shared.  *Id*.  The court held that the attorneys who leave the firm should have the opportunity to avoid disqualification by showing they never obtained any confidential information from the client.  *Id*.  The lawyer in *ProEducation* migrated *out* of the firm.  *Id*.  Unlike the migrating *out* lawyer in *ProEducation*, Morris migrated *in* when he joined Ostrom at the new firm.  Migration *in* falls squarely within imputed conflicts described in Rule 1.09(b), "when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them

practicing alone would be prohibited from doing so by [Rule 1.09(a)]." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(b), *see also* MODEL RULES OF PROF'L CONDUCT R. 1.9(b). If Morris obtained confidential information during his meetings with Whitcomb, he would personally be disqualified from representing Kolber under Rule 1.09(a)(2) and this personal disqualification would also be imputed to other lawyers at Ostrom Morris when Morris joined them under Rule 1.09(b).

The parties do not dispute that information was shared between Whitcomb and Morris prior to arbitration. However, the parties diverge regarding whether the information presented was confidential. Whitcomb argues that disqualification is appropriate because the information shared with Morris as a prospective client between June and September 2014 was confidential and substantially related to the pending bankruptcy issue. (ECF No. 74 at 21). Kolber, on the other hand, concedes that information was shared but claims that the information was not confidential because it was either disclosed in the presence of a disinterested third party or was a matter of public record. (ECF No. 75 at 9–12).

Attorney-client privilege exists to "protect confidential communications and the attorney client relationship." *Shields v. Strum, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Confidential information shared between individuals remains confidential only if those parties possess a common legal interest. *In re Santa Fe Int'l. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Confidentiality also extends to communications shared with other attorneys if done in order to further a common legal interest. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992).

For example, in *In re LTV Sec. Litig.*, plaintiffs claimed that communications made between a corporation and its counsel were not privileged because they were disclosed in the presence of a third party auditor the corporation hired. 89 F.R.D. 595, 599 (N.D. Tex 1981).

The district court concluded that the communications were privileged because the auditor was consulted "to formulate legal advice and render opinions to the management and directors of LTV." *Id*. at 600. Furthermore, this privilege existed despite the fact that the corporation could have performed the same services without the auditor's participation and the auditor's "investigative rather than strictly legal function." *Id*. at 600-01.

Kolber claims that the presence of attorney Robert Luke during Morris's meetings with Whitcomb precludes a finding that any information disclosed during those meetings was confidential. (ECF No. 75 at 11). To support this assertion, Kolber relies on the fact that Whitcomb and Luke had a personal relationship as friends that exceeded the scope of their professional relationship as attorney and client. *Id*. Because Luke played no role in Whitcomb's potential representation in the pending arbitration, Kolber argues that Luke cannot have a common legal interest with Whitcomb. *Id*.

Kolber construes the common legal interest requirement too narrowly. Although Luke was not involved in the arbitration matter, Kolber admits that Luke provided Whitcomb with legal services in the past. (ECF No. 75 at 11 (stating, "Luke would provide pro bono representation on behalf of Whitcomb")). Additionally, Whitcomb's testimony described his previous attorney-client relationship with Luke and how Luke sought to refer him to a competent probate attorney because Luke's expertise was in personal injury cases. (Hearing 6/29/2017 at 16:55). Similar to the holding in *LTV*, the fact that Luke did not directly represent Whitcomb in the arbitration matter does not indicate a lack of common legal interest between them. 89 F.R.D. at 600. As *LTV* sought data from the auditing company, Whitcomb similarly sought a referral to a more experienced attorney from Luke. *Id*. Kolber fails to point to anything other than the existence of a friendship between Luke and Whitcomb to establish a lack of common legal

interest between the parties. Since a common legal interest existed between Whitcomb, Morris, and Luke when the information was disclosed, that information remains confidential.

Kolber also argues that the information disclosed during the meeting was publicly available and thus cannot be a confidential communication. (ECF No. 75 at 12). Under the Texas and ABA Rules, a lawyer shall not knowingly "[u]se confidential information to the disadvantage of a former client . . . unless . . . the confidential information has become generally known." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(b)(3); *see also* MODEL RULES OF PROF'L CONDUCT R. 1.9(c)(1). According to Kolber, Whitcomb only provided "pleadings and [Geraldine] Whitcomb's estate planning documents—i.e., those that were widely available as publicly recorded documents." (ECF No. 75 at 12). However, Kolber only points to the documents Whitcomb provided and, more importantly, does not address the conversations that occurred between the parties prior to the arbitration hearing. Whitcomb asserts that during his conversations with Morris, he divulged information such as his financial condition, strategies for the arbitration, and strategies he expected Kolber's counsel to employ for the arbitration. (ECF. No. 74 at 5). Kolber fails to refute Whitcomb's assertion that Morris received this information during those meetings and Kolber fails to demonstrate that the contents of these conversations were a matter of public record. Accordingly, Kolber's argument that Whitcomb provided publicly available rather than confidential information also fails.

As the party seeking disqualification, Whitcomb bears the initial burden to prove Ostrom Morris should be disqualified as Kolber's counsel. Whitcomb carried this burden by demonstrating that confidential information was shared between Whitcomb and Morris at the June 29, 2017 hearing. The burden then shifted to Kolber to demonstrate that no confidential

information was shared between Whitcomb and Morris during their meetings. Although this is a difficult decision, the Court holds that Kolber has failed to satisfy this requirement.

*Preclusive Effect of Arbitration Ruling*

Kolber finally argues that the ruling which denied Whitcomb's original motion to disqualify counsel during arbitration should collaterally estop this Court from issuing a subsequent ruling on the issue. (ECF No. 75 at 13-17). If an arbitral proceeding considers the "federal interests warranting protection," an arbitrator's decision may have a preclusive effect on federal court proceedings. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985). However, in order for collateral estoppel to apply to an arbitration decision, it must provide the parties with the "basic elements of adjudicatory procedure." *Universal Am. Barge Corp., v. J-Chem, Inc.*, 946 F.2d 1131, 1137–38 (5th Cir. 1991). Specifically, a court should examine whether litigating the issue in federal court may result in procedural differences which affect the outcome for the party challenging the use of collateral estoppel. *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014). A prerequisite for collateral estoppel is that the "arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written memorandum." *Universal Am.*, 946 F.2d at 1137, *Mower v. Boyer* 811 S.W.2d 560, 63 (Tex. 1991) (holding that a decision must be supported with a reasoned opinion to be adequately adjudicated).

Here, the arbitrator's ruling that denied the original motion to disqualify fails to meet this requirement. The order provided just one sentence that summarily denies the motion without stating any findings of fact or conclusions of law leading to that decision. (ECF No. 51 at 2 "Exhibit A"). This conclusion alone fails to provide the Court with the basis and reasoning

needed to support the arbitrator's decision and demonstrate that all plausible outcomes were considered. As a result, precluding re-litigation of this issue would be improper.

Even if the arbitrator had provided a fully reasoned basis for her decision, the outcome of this decision would not change. Although federal courts must give preclusive effect to state court judgments, arbitration decisions are not recognized as judicial proceedings under the full faith and credit clause. *McDonald v. West Branch*, 466 U.S. 284, 287-88 (1984), *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 643 (5th Cir. 1985). Accordingly, even if the arbitration proceeding satisfied all the requirements for collateral estoppel, the Court would not be bound to apply the arbitrator's decision in this proceeding and Whitcomb's motion to disqualify is granted.

## Conclusion

The court will enter an order consistent with this Memorandum Opinion.

SIGNED **September 18, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE